[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CUSTODY OF CHANDLER TAFF
Chandler Taff is nearly three and one half years old. His parents have been in court litigating custody issues for the past two and one half years, over seventy percent of his life! So far!
It is axiomatic that children need stable and consistent CT Page 7681 nurturing in their rearing. Presently, Chandler Taff has not had that experience. Even at this tender age he is unsure of where or with whom he will be with. The frequent visits to court by his parents, and his mother's telling him that she will be going to court again to "change the rules" is counter-productive to his mental health.
The court had the opportunity to essentially hear this matter twice. In the summer of 1993, the court heard evidence over the course of a few days. Ten witnesses testified including the parties; Dr. Howard Kreiger, a court appointed psychologist for the "family"; Doris Smith, the child's nanny; Dr. Kunjathon Thankappon, who is mother's psychiatrist; Dr. Opsahl who is mother's psychological tester; two police officers; a family friend and mother's ex-husband and father of her other child, Natalie.
The court rendered a memorandum regarding the summer of 1993 hearing and incorporates it by reference here. Unfortunately for Chandler, little has changed since that first hearing and the court's expressed hope for a modification of mother's behavior has not been realized.
The summer of 1994 brought the second evidentiary hearing to hopefully finalize the custody and visitation issues surrounding young Chandler Tall. The court heard extensive testimony and argument over the course of several more days. The parties filed five memoranda articulating their claims. The court listened to the testimony of seventeen witnesses for both parties: Dr. Howard Kreiger court-appointed "family" psychologist; Doris Smith, Chandler's nanny; Clayton Lovallo, family relations counsellor; Sally Smith a former co-worker of mother; Ann Spencer, a respiratory therapist who lives with Steven Collette, the father of Natalie who is the defendant mother's other child; Steven Collette, the ex-husband of the defendant mother; Patricia Rovezzi, ex-wife of the plaintiff father; Peter Chapman, a friend of the plaintiff father; Marie Amedy, a friend of the defendant mother; Tammy Bettcher Walker, the sister of the defendant mother; Rosemary Malario, teacher of mother's other child, Natalie; Dr. Shah, psychiatrist; Dr. Kunjathan Thankappon, mother's psychiatrist; and Cladia Killacky, a new nanny at mother's home.
The court observed the demeanor of the many witnesses, many for the second time, and reviewed numerous exhibits including several photo albums, psychological evaluations and the family relations report. CT Page 7682
All of this tangible and intangible data directs the court to two mirror image conclusions. First, Chandler Taff needs closure on those issues of custody and visitation. Second, defendant mother should have a reduced role in Chandler's life which will provide some closure with more stability, and less negativism.
As noted in the court's earlier memorandum in 1993 these conclusions were not inevitable but rather placed "in the hands of mother." She had the opportunity in the ensuing year to modify her behavior for Chandler's benefit. She either chose not to change or is unable to change. Chandler loses either way.
She still appears to have little insight into the significance or causes of her negative behavior. She is still self-centered. She still exhibits rage, even on two occasions in the "fishbowl" of the open courtroom.
Mother's past drug history aside, her reliably reported behavior regarding Chandler from the date of the first hearing, nearly one year ago, until this date include:
1. Accusing Dr. Howard Kreiger of being biased toward her.
 2. Telling Chandler about court proceedings in direct violation of court orders.
3. Using foul and profane language (even while testifying).
4. Disrupting his toilet training.
 5. Not returning numerous calls from plaintiff father relating to Chandler.
 6. Leaving plaintiff father's driveway at an excessive rate of speed.
 7. Ignoring the medical needs of Chandler in terms of medications and their use.
8. Screaming and shouting in an abusive manner.
Succinctly put, the court agrees with Family Relations counsellor Clayton Lovallo that mother has done essentially nothing to change in the intervening year. CT Page 7683
In fact, Mr. Lovallo's assessment is exactly that of the court's.
 Analysis of the data acquired throughout this evaluation process indicates that we have two parents and a child that are unfortunately stuck in a destructive cycle of non-cooperation and negative accusations. Since the beginning of this evaluation there has been a continuation of episodes reported and responded to by the court that describes a series of volatile interaction between the parents and witnessed by the minor child. Unfortunately this parental disharmony and destructive behavior had not decreased following the insertion of a responsive court order.
 Mr. Taff and Ms. Bettcher on an individual basis are creative, articulate and sensitive and profess their true role interest to be what is in the best interest of the minor child. Unfortunately the perpetual volley of negative accusations and the display of reported inappropriate, immature and self centered behavior that has been witnessed by the minor, contradicts the validity of these parents perceived and articulated interest.
 Clearly of either parent Mr. Taff appears to be the more grounded in structure and patience and less likely of the two parents to react with an emotionally intensified response to events concerning Ms. Bettcher or the young child. Ms. Bettcher on the other hand has demonstrated at times her inability to separate her own emotionality from co-parenting task resulting in negative reactive responsive directed toward Mr. Taff.
Report of Clayton Lovallo, Jr., Family Relations Counsellor, June 13, 1993.
Although it is unlikely that the orders entered by the court today will be permanent, in view of mother's continuing intellectual problems and her willingness to pay for extended and perhaps counter-productive litigation, the court believes that they will at least provide a healing hiatus for Chandler until such time as mother "gets the picture" or, in the unfortunate alternative, presents the next legal assault. Predictibly, with funding available, mother will continue to direct her negative energies CT Page 7684 outward rather than addressing them within herself. Perhaps, Chandler will on be free from this psychological torture when he reaches his eighteenth birthday.
I invite him and his therapist, to review these memoranda and discover the probable source of many of his adulthood emotional problems.
Accordingly, the court enters the following orders:
1. Custody. Sole legal and physical custody of Chandler Taff is awarded to the father.
2. Visitation:
Mother shall have visitation as follows:
 a. Wednesdays from 9:00 a.m. to 5:00 p. m. Chandler is to be returned to his father's residence by 5:30 p. m.
 b. Alternate weekends. From Friday through Sunday 9:00 a.m. to 5:00 p. m. Chandler is to be returned to his father's residence by 5:30 p. m.
 c. Holidays of Easter, Christmas, July 4th, Mother's Day and Chandler's birthday from 9:00 a.m. until 3:00 p. m. Chandler is to be returned to his father's residence by 3:30 p. m.
 d. Nanny. All visitation is to occur in the presence of a nanny.
 e. Selection of nanny: Both parties may recommend nannies. Chandler's attorney shall have final approval of the hiring of each nanny and shall apprise such nanny of Chandler's situation and needs.
 f. Transportation: Transportation of Chandler to and from his parent's abodes shall be done by third parties.
 g. Vacation: Father shall have two weeks of vacation each year with Chandler. Mother shall have two weeks CT Page 7685 of vacation with Chandler each day from 9:00 a.m. to 5:00 p. m. Father shall decide on the latter vacation period.
 h. Payment of the nanny: The parties shall share the cost of the nanny on an equal basis.
 i. Absence of a nanny. No visitation shall occur without a nanny being present. Visitation time lost through the absence of a nanny shall be regained on the next non-visitation weekend in a length comparable to the time lost. If, however, father had prior plans for the next non-visitation weekend then the next non-visitation weekend shall be utilized.
 j. Miscellaneous items: all clothing, medication, toys or other items sent with Chandler are to be returned with him the same day.
 3. Treatment of Chandler by Parents:
a. Neither parent shall verbally abuse Chandler.
 b. Mother shall not smoke in any building or motor vehicle while Chandler is present or within two hours of his being present.
 c. Each parent shall immediately apprise the other of any medical, dental or psychological problems that Chandler may have.
 d. Each parent shall inform the other of any school conferences or activities when they arise.
 e. Each parent shall promote an atmosphere of respect for the other while in Chandler's presence.
 f. Each parent shall, conversely, refrain from making any disparaging remarks about the other in Chandler's presence.
 g. Each parent shall refrain from discussing any future court proceedings in Chandler's presence, directly CT Page 7686 or indirectly.
 h. Father shall provide all medication and instructions for administering such medication. The latter shall be made known directly to the nanny.
 i. Each party shall exchange all appropriate phone numbers so that communication concerning Chandler can occur at any time. This includes car phone and pager numbers as well.
The court declines to order therapy of any kind for the parties or Chandler. It is obvious that such an order will just be another battleground. Naturally, the court hopes that reasonable
people will avail themselves of whatever therapy that is necessary to allow Chandler to become a healthy and happy young boy.
This order shall be effective immediately. The first visitation for mother shall commence on Wednesday, August 3, 1994. Her first weekend visitation shall commence on Friday, August 5, 1994. The court does not decide any other economic issues and relinquishes jurisdiction of the case on such economic issues.
GILL, J.